IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DANA DAWN STEPHENSON, )<br>)<br>           Plaintiff, )<br>)<br>v.                                                      )<br>)<br>KILOLO KIJAKAZI,[1]                 )<br>Acting Commissioner of the Social )<br>Security Administration,            )<br>)<br>           Defendant.               ) | Case No. CIV-21-004-JFH-SPS |

## REPORT AND RECOMMENDATION

The claimant Dana Dawn Stephenson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied.  If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Cir. 1991). But the Court must review the record as a whole and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-three years old at the time of the administrative hearing (Tr. 258). She possesses a high school education and some college education (Tr. 65, 263). She has worked as a billing clerk and claims clerk I. (Tr. 37, 85-86). The claimant alleges that she has been unable to work since January 1, 2016, due to CRPS/RSD in the tailbone, back pain, depression, anxiety, insomnia, memory loss, concentration, arthritis, and headaches/migraines (Tr. 262).

## Procedural History

On July 24, 2018, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ Jeffrey S. Wolfe conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 14, 2020 (Tr. 10-38). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), *i. e.*, she can lift/carry twenty pounds occasionally and

ten pounds frequently, stand/walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday.  Additionally, he found she could only occasionally climb ramps/stairs and was unable to climb ladders/ropes (Tr. 17).  The ALJ then concluded that the claimant could perform her past relevant work as a bill clerk and claim clerk I as actually and generally performed (Tr. 37).

## Review

The claimant contends that the ALJ erred by (i) failing to properly evaluate the medical opinions of her treating physician, Dr. Dudney, and (ii) failing to properly assess her RFC. The undersigned Magistrate Judge agrees that the ALJ failed to properly assess the evidence in the record at step four, and the decision of the Commissioner should therefore be reversed and the case remanded for further proceedings.

The ALJ determined that the claimant had the severe impairments of complex regional pain syndrome (CRPS), sacrococcygeal disorder; and reflex sympathetic dystrophy, as well as the non-severe impairments of major depressive disorder, generalized anxiety disorder, anemia, attention and concentration deficit, and status post bariatric surgery (Tr. 13).  The relevant medical evidence reveals that the claimant was treated for tailbone pain in 2014 and diagnosed with coccydynia on March 26, 2015, and given a steroid injection of the tendon (Tr. 346, 362).  She continued to receive treatment for this pain, which was described as chronic (Tr. 426, 445).  She received an additional diagnosis of reflex sympathetic dystrophy (Tr. 445).  On May 3, 2016, the claimant was assessed as having chronic coccygeal pain secondary to traumatic injury, as well as depression (Tr. 380).  However, a 2016 CT scan of the pelvis showed a normal pelvis, and a 2015 MRI

scan demonstrated no fracture, marrow edema, or marrow replacement process (Tr. 471, 474). The claimant's treating physician, Dr. Daniel Morris, described her sacrococcygeal area having "exquisite tenderness at the mid sacrum distally," and he assessed her with chronic pain syndrome, chronic sacrococcygeal pain, and CRPS of the sacrum (Tr. 482-483, 496).

On August 16, 2016, the claimant's treating physician, Dr. William H. Dudney, M.D., wrote a letter describing the claimant's pain and treatment history (Tr. 484-485). He referred the claimant to Dr. Trang Nguyen, who assessed the claimant with chronic coccygeal pain secondary to traumatic injury and depression (Tr. 488). He recommended repeating injections but noted the claimant's hesitation in light of a lack of permanent cure (Tr. 488). The claimant continued to seek treatment for the coccygeal pain, and treatment notes reflect the claimant used a pressure relief cushion for her coccyx and continued to experience significant tenderness (Tr. 545).

In January 2017, the claimant continued to have severe pain without pathology, indicating more of an RSD-type phenomena, and also appeared to be struggling with cognition; a neurological evaluation was recommended (Tr. 548). The claimant reported in March 2017 that she could only sit for ten to twenty minutes at a time and move to standing for twenty to thirty minutes before needing to lie down to relieve back and coccyx pain (Tr. 614). Treatment notes from April 2017 indicate that the claimant had to sit on one leg or on a soft object to avoid pressure on her coccyx, and that she was limited in standing for long periods, in addition to short term memory loss, concentration ability, and other cognitive changes (Tr. 612).

On June 15, 2017, the claimant presented to Dr. Denise LaGrand, Psy.D., for a mental status evaluation (Tr. 532-536).  She assessed the claimant with major depressive disorder and generalized anxiety disorder (Tr. 535).  As part of her assessment, she noted that the claimant had marked impairments in dealing with stress in a work environment, work interruptions due to psychiatric symptoms, and performing work activities consistently, as well as the moderate limitations of, *inter alia*, sustained concentration and persistence, performing detailed/complex tasks, adaptation, interacting with coworkers and the public, and pace (Tr. 535).

Dr. Dudney prepared another letter dated January 8, 2018, in which he indicated the disability examiner assessment had failed to account for the claimant's pain in the coccyx, and noted that she was on a high level of pain medication that did not completely alleviate her pain (Tr. 554-555).  He noted this caused the development of reflex sympathetic dystrophy, an uncommon severe pain disorder (554).  He wrote on September 12, 2018 that the claimant was "completely disabled and unable to work" due to her severe pain (Tr. 573).  In another letter dated February 20, 2019, Dr. Dudney stated "unequivocally that [the claimant] is unable to work at this time because of the severity of her continual (24/7) pain, with any increase of local pressure and markedly impaired ability to sit or stand" (Tr. 558).  He also noted that her medications caused additional problematic side effects secondary to her impairments (Tr. 558).  He stated that her diagnoses were coccydynia with secondary RSD, situational depression, situational anxiety, insomnia, cognitive impairments, and physical disability and inability to work secondary to the above-listed impairments (Tr. 558, 619).  That same day, Dr. Dudney also completed a mental RFC

assessment questionnaire as to the claimant, noting her functional limitations included cognitive changes of impaired concentration, attention span, memory, reading, fatigue, worry, and stress (Tr. 676).

In September 2018, the claimant presented as a new patient for a spinal cord stimulator trial consultation (Tr 592-597). At the time of exam, she was noted to have an abnormal gait (Tr. 592-593). She presented to Dr. Harold Pierre on June 21, 2019, with constant pain, and he adjusted her medications to find a better combination for her pain (Tr. 754). On January 6, 2020, he recommended a surgical consult for her coccyx, noted one medication had been causing memory loss and concentration despite helping with pain, and further recorded joint pain and stiffness along with weakness and restricted motion (Tr. 721-723).

On November 3, 2018, Dr. Emily Grewe-Nelson, D.O., conducted a physical examination of the claimant (Tr. 658-665). She noted that the claimant was unable to squat and rise from a squat, but that she was able to rise from a sitting position without assistance, although she had some difficulty getting up and down from the exam table (Tr. 661). The claimant was able to stand but was unable to heel/toe walk or hop, and her tandem walking was abnormal (Tr. 661). She further recorded decreased range of motion of the lumbar spine, as well as a positive straight leg raise test (Tr. 661-665).

State agency physicians determined that the claimant could perform light work, but that she could only occasionally climb ladders/ropes/scaffolds and kneel, and only frequently climb ramps/stairs, stoop, crouch, and crawl (Tr. 107-108). This was affirmed on reconsideration (Tr. 133-135). As to her mental impairments, Dr. Laura Eckert, Ph.D.,

found the claimant could understand and perform simple and some complex tasks (1-4 steps) with routine supervision, relate to others on a superficial work basis, have incidental contact with the public, and adapt to a work situation with forewarning (Tr. 112).  On reconsideration, Dr. Laura Lochner, Ph.D., found the claimant was able to perform one- and two-step tasks and make related judgments; concentrate for two-hour periods with routine work breaks, and pace and persist for and eight-hour workday and forty-hour workweek despite psychological symptoms; interact with coworkers and supervisors to learn tasks and accept criticism, but could not tolerate frequent interactions with the public; and that she could adjust to repetitive work tasks and minor changes in a usually stable work situation (Tr. 139).

In his written opinion at step two, the ALJ found that the claimant's depression, anxiety, and attention and concentration deficit were nonsevere impairments, further concluding that they caused no more than mild limitation in the four functional areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself (Tr. 13-16).  At step four, the ALJ provided an exhaustive summary of the claimant's hearing testimony, as well as the medical evidence in the record (Tr. 18-28).  At the conclusion of the description of the evidence, the ALJ, as relevant, found the claimant capable of light work, but only standing/walking two hours, with occasional climbing ramps/stairs, and no climbing ladders/ropes.  In support, he cited normal radiographs of her pelvis/bones, as well as a normal gait and 5/5 muscle strength, with numerous citations to the record.  He did not, however, acknowledge the points in the record noting the claimant's abnormal

gait, nor the positive straight leg raise test (despite it being cited to support a finding of a normal gait); indeed, he found she had intact reflexes (Tr. 28).  As to the longstanding coccygeal tenderness, he concluded that it supported the above-mentioned limitations and no more (Tr. 28).  The ALJ devoted considerable time to finding Dr. Dudney's numerous opinions not persuasive (Tr. 28-31).  He included numerous citations to the record that the claimant herself denied cognitive problems (citing only records from 2017), had unremarkable perception and flow of thought, normal mood and affect, intact sensation, 5/5 muscle strength, being in no acute distress, and her cognitive examinations found her able to understand questions, and respond appropriately.  He also noted Dr. Dudney's opinion was inconsistent with her reportedly taking care of a grandchild several days a week (Tr. 29-30).  He also cited numerous records where the claimant was alert, oriented, with intact memory, and had normal speech and adequate eye contact, as well as the ability to understand questions and respond appropriately, (Tr. 30-31).  He therefore found Dr. Dudney's opinion inconsistent with her reported abilities and therefore not persuasive (Tr. 31).  The ALJ then found the state reviewing physician opinions as to her physical impairments partially persuasive, noting the physical limitations but then citing her daily activities and ability to independently travel, shop, and prepare food as inconsistent with their conclusions (33-34).  As to her mental impairments, the ALJ found the state reviewing physician opinions not persuasive, citing the notations in the record where the claimant had a normal affect and mood, appropriate behavior and thought content, adequate insight and judgment (Tr. 34-36).  The ALJ ultimately concluded that the claimant could return to her past work as a bill clerk and as a claims clerk (Tr. 37).

The claimant contends that the ALJ erred in assessing her RFC, as well as in evaluating the opinions of Dr. Dudney, and the undersigned Magistrate judge agrees. The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013) (*citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)). Here, the ALJ has admittedly recited a voluminous amount of evidence in his opinion, but he appeared to focus solely on records with positive findings regarding the claimant's physical impairments in a deliberate attempt to pick and choose among the evidence in order find the claimant not disabled. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.") (*citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]). This was error. Instead, the ALJ should have explained why the claimant's severe physical impairments, supported by repeated treating physician opinion findings, did not call for corresponding limitations in the RFC.

Furthermore, it is not clear why the ALJ rejected every medical opinion as to the claimant's mental impairments. It is true that any failure to find the claimant's additional impairments severe at step two is considered harmless error *at step two* because the ALJ would nevertheless be required to consider the effect of these impairments and account for them in formulating the claimant's RFC *at step four*. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.") (*quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004)). *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. But here the ALJ devoted a significant amount of time rejecting any limitation related to her nonsevere mental impairments, choosing to recite only positive records despite consultative, reviewing, and treating physician opinions indicating further limitations would be appropriate. *See Hardman*, 362 F.3d at 681 (noting that the ALJ may

-11-

not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). This is especially pertinent given the suggestion of a connection between her mental impairments and her pain level. *See Baker v. Barnhart*, 84 Fed. Appx. 10, 13 (10th Cir. 2003) ("The ALJ's step-two finding [of the severe impairment of chronic back pain] makes it impossible to conclude at step four that her pain was insignificant][.]"). Furthermore, the ALJ is required to consider all of a claimant's impairments – both severe and nonsevere – singly and in combination, when formulating a claimant's RFC.

Because the ALJ failed to properly evaluate *all* the claimant's impairments and the opinion evidence of record, the decision of the Commissioner is therefore reversed and the case remanded to the ALJ for further analysis of the claimant's impairments. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

-13-

**DATED** this 24th day of February, 2022.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**

6:21-cv-00004-JFH-SPS Document 19 Filed in ED/OK on 02/24/22 Page 13 of 13

-13-